**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      CRIMINAL ACTION NO. 2:25-cr-00173

JOE CLAUDE SCHLEIDER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 14, 2026, the Court conducted a bench trial with regard to the charge contained in the Indictment, (ECF No. 1), against Defendant Joe Claude Schleider ("Defendant"), (ECF No. 52). As discussed in the findings of fact and conclusions of law below, the Court **FINDS** Defendant **GUILTY**.

### I.    *BACKGROUND*

This matter arises out of Defendant's indictment for willfully destroying government property, in violation of 18 U.S.C. § 1361. (ECF No. 1.) On April 1, 2026, the Court held a plea hearing on this alleged violation. (ECF No. 39.) During that hearing, rather than enter a guilty plea, Defendant requested a bench trial. (*Id.*) Accordingly, the Court held a bench trial on April 14, 2026. (ECF No. 52.) At the start of the bench trial proceedings, the Court conducted a colloquy with Defendant and determined that Defendant knowingly, intelligently, and competently waived his right to a trial by jury. (*Id.*) Then, Plaintiff United States ("the Government")

1

presented its case in chief.  (*Id.*)  After the Government rested, Defendant moved for judgment of acquittal, which the Court denied.  (*Id.*)  Defendant then chose to rest his case without presenting any evidence.  (*Id.*)  At the conclusion of the bench trial, the Court took the matter under advisement and informed the parties it would enter a final verdict by way of written opinion. (*Id.*)

## II.    LEGAL STANDARD

"In a case tried without a jury, the court must find the defendant guilty or not guilty."  F. R. Crim. P. 23(c).  "When . . . a jury trial is waived, the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts."  *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987).  As the sole trier of fact, the judge must find the prosecution proved "beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [the defendant] is charged."  *See In re Winship*, 397 U.S. 358, 364 (1970).  "If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion."  F. R. Crim. P. 23(c).  While neither party made a request in this case, the Court chooses to provide this written decision explaining the verdict rendered.

## III.    DISCUSSION

The following discussion represents the Court's findings of fact and conclusions of law as to Defendant's guilt.

### A.  Findings of Fact

Having heard the evidence and testimony in this matter, the Court makes the following findings of fact:

1.  On or about May 6, 2025, Defendant repeatedly struck a card reader located outside the office of the Department of Homeland Security on 210 Kanawha Boulevard West.

This finding is supported by video evidence, (Gov. Ex. 4), and the testimony of Sergeant Travis Bailes ("Sergeant Bailes"), of the Charleston Police Department, (*see generally* Bench Trial Tr.). The Court does not have to create a mental image of Defendant hitting the card reader and what that might have looked like. Surveillance video caught every single strike. (Gov. Ex. 4.) The video shows a man approaching a card reader while holding a long pole-like metal object. (*Id.*) The man appears to talk to the card reader, then without any apparent provocation, he starts hitting the card reader with the pole. (*Id.*) His strikes were not gentle; he swung hard. (*Id.*) In total, the man struck the card reader approximately eight times, using such force that damage would be an almost certain result. (*Id.*)

Sergeant Bailes identified the man as the Defendant in this case. (*See generally* Bench Trial Tr.) Sergeant Bailes testified that during his career, he has interacted with Defendant "half a dozen to a dozen times." (*Id.*) Federal Protective Services contacted Sergeant Bailes and showed him a photo of the individual who had been captured on surveillance video outside the Department of Homeland Security Office ("DHS Office"), located at 210 Kanawha Boulevard West. (*Id.*) Sergeant Bailes identified the man as Defendant Joseph Schleider. (*Id.*) During the bench trial, Sergeant Bailes made this same identification in Court, testifying that the man he saw in the surveillance photo is the Defendant. (*Id.*)

2.  The card reader was the property of the United States Government.

The Court makes this finding based on the numerous signs posted all around the DHS Office building. (Gov. Exs. 2A–2E.) These signs clearly state that the property is "U.S. Government property." (*Id.*) Most notably, there is a sign posted on the gate the card reader

opens, so proclaiming.   (Gov. Ex. 2E; *see also generally* Bench Trial Tr.)   Also, Resident Agent in Charge Patrick Kelly ("Agent Kelly"), an employee for Homeland Security Investigations ("HSI"), testified that the card reader is property of the United States Government.   (*See generally* Bench Trial Tr.)   Additionally, numerous photos of the property and signs were entered into evidence.   (Gov. Ex. 2A–2E.)   Based on the evidence, it would be abundantly clear that the card reader was property of the U.S. Government.   (*Id.*)

> 3. <u>The cost of fixing the damage Defendant caused to the card reader was approximately $1,800.</u>

The testimony of Agent Kelly supports this finding.   (*See generally* Bench Trial Tr.) Agent Kelly testified to the damage Defendant inflicted on the card reader.   (*Id.*)   He reviewed about six days' worth of surveillance footage showing the card reader in view and testified that Defendant's repeated strikes against the card reader caused the damage.   (*Id.*)   The card reader showed signs of markings down the number pad, the display screen was inoperable, and it lost its gray shell casing.   (*Id.*, *see also* Gov. Exs. 3A–3B.)   Put simply, the card reader was broken and could no longer perform one if its main functions: opening the gate.   (*See generally* Bench Trial Tr.)   According to Agent Kelly, Defendant's actions (rather than anyone or anything else) caused the damage because of how he violently struck the card reader.   (*Id.*)

To fix the card reader, Agent Kelly testified that HSI contacted Omnitec, the company that installed the card reader, to attend to its repair.   (*Id.*)   In July of 2025, an Omnitec repair tech came and replaced the card reader.   (*Id.*)   Omnitec took the damaged card reader and Agent Kelly testified that he did not know what the repair tech did with it.   (*Id.*)   The Government paid approximately $1,800 to replace the card reader.   (*Id.*)   Consequently, Defendant's actions cost the Government approximately $1,800 in monetary damages.

During closing arguments, Defendant asked this Court to make an adverse inference because the damaged card reader is physically unavailable. (*Id.*) "Before permitting a jury to draw an adverse inference . . . a trial court must find that the evidence at issue was relevant such that it 'would naturally have been introduced into evidence[.]'" *Callahan v. Pac. Cycle, Inc.*, 756 Fed. App'x 216, 227 (4th Cir. 2018) (per curiam) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995).) The court must also find that "the 'intentional conduct' of the party in control of the evidence contributed to its loss or destruction." *Id.* As the trier of fact in this case, the Court will apply these same principles in determining if it should draw an adverse inference concerning the cost of repair.

Here, Omnitec's actions mitigate against finding an adverse inference against the Government on the cost of repair. True, the card reader might have been introduced into evidence. However, as Agent Kelly testified, an Omnitec employee came in, replaced the card reader, and took the damaged card reader. (*See generally* Bench Trial Tr.) Its location is now unknown. (*Id.*) There is no evidence that the Government intentionally contributed to the loss or destruction of the card reader. (*Id.*) Instead, it appears to have been removed in the ordinary course of repair work necessitated by Defendant's actions. (*See id.*) Defendant did not raise, and this Court did not find any reason to question, the credibility of Agent Kelly's testimony. As such, these circumstances fail to enable this Court, as the trier of fact, to find an adverse inference against the Government on the cost of repair.

> 4. <u>Defendant knew that destroying property owned by others was unlawful conduct.</u>

5

First and foremost, Defendant does not dispute this fact.  He conceded through counsel that he knew that destroying property was unlawful.[1]  (*Id.* ("There's never been a dispute that Mr. Schleider knew that destruction of property was unlawful."))

Further, the testimony of Charleston Police Department Corporals Jacob Whittington ("Corporal Whittington"), and Opie Smith ("Corporal Smith"), support this finding.  (*See generally* Bench Trial Tr.)  Corporal Whittington testified that on or about November 1, 2024, he responded to a call about events relating to a broken door on 912 Chilton Street.  (*Id.*)  Corporal Whittington arrested Defendant for destruction of property.  (*Id.*)  Similarly, on or about September 10, 2020, Corporal Smith responded to a destruction of property call.  (*Id.*)  Corporal Smith arrested Defendant for destruction of property, and Defendant was convicted in the Kanawha County Magistrate Court.  (*Id.; see also* Gov. Ex. 6.)  These two prior arrests and single conviction obviously show that Defendant knew it was unlawful to destroy property owned by others.

5.  <u>Defendant knew that he was destroying property.</u>

In his closing argument, Defendant argued that he did not know that he was destroying property because he did not know that he was causing damage to any property.  (*Id.*)  The Court is not persuaded.  Indeed, the Court doubts the card reader would have survived even one of Defendant's blows.  Defendant's actions were caught on video.  (Gov. Ex. 4.)  That video shows Defendant purposefully striking the card reader with his metal pole not once, not twice, but approximately *eight times*.  (*Id.*)  The force of this evidence leads to the strong inference that

---

[1] "[A] lawyer's statements may constitute a binding admission of a party[] if the statements are deliberate, clear, and unambiguous[.]"  *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (citations and quotations omitted); *see also In re McNallen*, 62 F.3d 619, 625 (4th Cir. 1995) (finding the appellant conceded an issue when his trial counsel made an in-court statement).

Defendant knew that he was destroying property when he repeatedly struck the card reader with his metal pole.[2]

### B. Conclusions of Law

The single-count indictment charges Defendant in violation of 18 U.S.C. § 1361. (ECF No. 1.) Under this statute,

> [w]hoever willfully injures or commits any depredation against any property of the United States, . . . shall be punished as follows: If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both[.]

Consequently, the Government bears the burden of proving that Defendant (1) damaged or destroyed government property; (2) willfully; and (3) caused damage that exceeds $1,000. *See United States v. Yonathan Melaku*, 41 F.4th 386, 390–91 (4th Cir. 2022).

A defendant acts willfully when he acts "with knowledge that his conduct was unlawful." *United States v. Bryan*, 524 U.S. 184, 192 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)); *see also United States v. Moylan*, 417 F.2d 1002, 1004 (4th Cir. 1969) ("The statutory requirement of willfulness is satisfied if the accused acted intentionally, with knowledge that he was breaching the statute."). In other words, the defendant must act "intentionally and purposely and with the intent to do something the law forbids." *United States v. Scott*, 188 Fed. App'x 213, 216 (2006) (per curiam) (quoting *Bryan*, 524 U.S. at 189).

Here, as to the first element, Defendant damaged property when he repeatedly struck the metal card reader. Defendant's strikes caused such damage that an Omnitec repair tech came and

---

[2] To be clear, the only reason Defendant argues that he did not know that his actions were unlawful is his assertion that the Government did not demonstrate that he had the requisite mental state, that is, *knowledge* that he was destroying property. (*See generally* Bench Trial Tr.) Defendant expressly informed the Court that he is *not* asserting an insanity defense. (*Id*.) This is important in part because of the conversation the Defendant seemed to have with the card reader before his violent onslaught.

replaced the card reader.   Also, the card reader was the property of the United States Government, as indicated by the signs posted all around the DHS Office building.

Turning to the second element, Defendant acted willfully.   Defendant conceded that he knew that destroying property was unlawful.   His actions also show that he knew that he was damaging the card reader when he hit it with a metal pole.   He repeatedly hit the card reader with such force that the Court can easily infer that he knew his hits would cause damage.

Finally, the damage to the card reader exceeded $1,000, as the cost to the Government to replace the card reader was approximately $1,800.   Accordingly, the Government met its burden of proving all the elements under 18 U.S.C. § 1361 beyond a reasonable doubt.

### IV.    CONCLUSION

For these reasons, the Court **FINDS** Defendant **GUILTY** as to the single-count of Destroying Government Property, in violation of 18 U.S.C. § 1361.   For the foregoing reasons and based on all the evidence presented at trial, the Court enters the following Verdict after a bench trial.

### V.    VERDICT

The Court finds, based on all the testimony and evidence presented, as follows:

1.  That Defendant is **GUILTY** of the single-count of Willful Destruction of Property of the United States, in violation of 18 U.S.C. § 1361.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        May 14, 2026

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

9